IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Warren J. P.,[1] | ) | Case No.: 9:24-379-SAL |
|                Plaintiff, | ) | |
| vs. | ) | |
| Michelle King, | ) | **OPINION AND ORDER** |
| Acting Commissioner of Social Security Administration,[2] | ) | |
|                Defendant. | ) | |

This matter is before the court for review of the January 10, 2025 Report and Recommendation of United States Magistrate Judge Molly H. Cherry (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 25.] In the Report, the magistrate judge recommends the Commissioner's final decision denying Plaintiff's claim for Supplemental Security Income be affirmed. *Id.* Plaintiff filed timely objections to the Report. [ECF No. 19.] For the outlined reasons, the court adopts the Report and affirms the Commissioner's final decision.

**STANDARD OF REVIEW**

The scope of federal court review under 42 U.S.C. § 405(g) is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "Under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Michelle King was named Acting Commissioner on January 20, 2025. Under Fed. R. Civ. P.

substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to the court. The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). Without specific objections to portions of the Report, this court need not explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the record in order to

25(d), she is substituted as a party to this action.

accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

**DISCUSSION**

The Report sets forth the administrative proceedings and applicable law, which the court incorporates herein without a full recitation. [ECF No. 25.] Briefly, after a hearing, the administrative law judge ("ALJ") found Plaintiff had severe impairments of lumbar degenerative disc disease ("DDD"), bilateral hip degenerative joint disease ("DJD"), coronary artery disease with stenting, myocardial infarction, and chronic kidney disease. *See id.* at 5. The ALJ concluded Plaintiff had a residual functional capacity ("RFC") to perform sedentary work with additional limitations. *Id.* at 4–5 (detailing exertional, postural, and other limitations). As a result, Plaintiff was unable to perform any of his past relevant work, but, considering his age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 5. Thus, the ALJ concluded Plaintiff had not been under a disability since March 3, 2020, the date his application for benefits was filed.

Plaintiff objected to the Report. [ECF No. 29.] Although Plaintiff sent a 45-page document as his objections, it includes multiple copies of a two-page document labeled "Objections to the report and recommendation filed 01/10/2025," along with a complete copy of the Report, and duplicate pages. *See generally id.* From the court's review, Plaintiff's substantive objections are contained in the two-page document labeled "Objections to the report and recommendation filed 01/10/2025." *Id.* at 1–2.

In his objections, Plaintiff "acknowledge[s] the assessment stating that [he is] capable of performing sedentary work" and notes "[w]hile this may have been possible a few years ago, my condition has deteriorated significantly." *Id.* at 1. He states his "attempted self-employment by running a small shop" failed due to his inability to maintain a consistent work schedule. *Id.* He

3

claims that, since he last submitted evidence, he has obtained health insurance and "[t]his year alone, [he has] seen an orthopedic specialist who has recommended [magnetic resonance imaging] for [his] knee," been referred to a spine injury and pain management specialist, and is scheduled for an outpatient procedure to address his back pain. *Id.* He also notes his most recent MRI revealed blood in his bone marrow and necessitated follow up with a hematologist and an oncologist. *Id.* He states he has upcoming appointments with a cardiologist and a urologist, as well. *Id.* He writes: "Many of the medical references cited in my case are nearly a decade old and do not reflect my current condition." *Id.* He includes a list of his medical providers. *Id.* at 2. He indicates he "rarely go[es] out" and either leans on a cart to grocery shop or has his groceries delivered and requires support in putting them away. *Id.* at 1. He expresses his frustration that the ALJ cited his travel five years prior as a reason for denying his disability claim. *Id.* He claims he has greater physical and postural restrictions than those reflected in the RFC assessment. *Id.* at 1–2.

Construed liberally, Plaintiff appears to object to the Report's findings that his recent medical records do not warrant remand and that the ALJ properly assessed his RFC. He references medical findings and treatment over the past year and upcoming appointments, but the magistrate judge did not consider this information since it was not presented before issuing the Report. However, the Report addressed the evidence Plaintiff submitted before its issuance. *See* ECF No. 25 at 16–19.

Plaintiff does not specifically object to the Report's conclusions regarding the materiality of evidence submitted with his complaint and brief. Without a specific objection, the court has reviewed those findings for clear error and found none.

The magistrate judge appropriately found the Commissioner's decision should not be reversed based on the evidence Plaintiff submitted to the court because it was not included in the

administrative record and "[r]eviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." *Id.* at 16–17 (quoting *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972)).

The magistrate judge properly noted that the court may only remand a case for consideration of new evidence under sentence six of 42 U.S.C. § 405(g), and that Plaintiff had not made a motion for such a remand. *Id.* at 17. Even if Plaintiff had done so, a remand under sentence six requires the evidence to be "new," "material," and with "good cause" for its omission from the administrative proceedings. *Id.* at 17 (citing *Finney v. Colvin*, 637 F. App'x 711, 715–16 (4th Cir. 2016)); *see also Schuler v. Saul*, 805 F. App'x 304, 305 (4th Cir. 2020) (quoting 42 U.S.C. § 405(g)).

Even if Plaintiff's evidence was new and could not have been included in the administrative record because it was generated afterward, the magistrate judge correctly emphasized that materiality requires the evidence to relate to the period considered by the ALJ. *Id.* at 18 (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991); *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (explaining that, to warrant a sentence six remand, the new evidence must "relate to the time period for which benefits were denied" and not be merely probative "of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition). The magistrate judge found the evidence immaterial because it did not pertain to the relevant time frame. *Id.* Notably, Plaintiff's doctor's form was "dated more than nine months after the ALJ's decision" and did not indicate it "relate[d] to the applicable time period" and other evidence "appear[ed] to have been complete in August 2024 or later." *Id.* at 18–19.

5

This reasoning also applies to the additional information Plaintiff references in his objections. Absent evidence to the contrary, records pertaining to Plaintiff's impairments and functioning in 2024 and 2025 are not material to determining his disability status between March 3, 2020, and January 23, 2023, when the ALJ issued his decision. Moreover, Plaintiff has only referenced, and has not submitted, any additional medical records. Consequently, the record before the court does not support a finding that Plaintiff had greater functional limitations than those recognized by the ALJ during the relevant period.

Plaintiff objects, stating that "[w]hile [performing sedentary work] might have been possible a few years ago, [his] condition has since deteriorated significantly." [ECF No. 29 at 1]. This suggests Plaintiff acknowledges his current functioning has declined since the relevant period, further indicating that any new medical evidence would not be material to his claim for the period before January 23, 2023.

Plaintiff has neither submitted new, material evidence compelling a sentence six remand nor presented arguments refuting the magistrate judge's findings about the evidence previously submitted. The court notes evidence of Plaintiff's most recent medical treatment and the deterioration in his impairments and functional abilities may be material to a new disability claim. But such evidence is not material to the prior ALJ's decision. Thus, the court overrules Plaintiff's objection regarding the failure to consider evidence produced after the ALJ issued his decision.

Having concluded that it cannot consider the new evidence Plaintiff references, the court now turns to Plaintiff's argument that his RFC was improperly assessed. A claimant's RFC "is an administrative assessment of the extent to which [his] medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his . . . capacity to do work-related physical and mental activities."

6

SSR 96-8p, 1996 WL 374184, at *2 (1996). It represents the most a claimant can still do despite his limitations. 20 C.F.R. § 416.945(a). An RFC assessment "must be based on all the relevant evidence in the case record, such as: [m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), [r]eports of daily activities, [l]ay evidence, [r]ecorded observations, [m]edical source statements, [e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, [e]vidence from attempts to work, [n]eed for a structured living environment, and [w]ork evaluations, if available." SSR 96-8p, 1996 WL 374184, at *5.

"[A]n ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017) (citing 20 C.F.R. § 404.1529(b), (c)). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* at 866 (citing 20 C.F.R. § 404.1529(b)). If the ALJ concludes the claimant's impairments could reasonably produce the symptoms he alleges, he continues to the second step in which he must "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. § 404.1529(c)).

At the second step, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). In undertaking this inquiry, the ALJ should consider "statements from the individual, medical sources, and any other sources that might have information about the claimant's symptoms, including agency personnel," as well as: (1) the claimant's ADLs; the location, duration, frequency, and intensity of the claimant's pain or other

7

symptoms; (3) any precipitating or aggravating factors; (4) the type dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions based on pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7–8; 20 C.F.R. § 416.929(c)(3), (4).

The RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; [i]nclude a resolution of any inconsistencies in the evidence as a whole; and [s]et forth a logical explanation of the effects of symptoms, including pain, on the individual's ability to work. SSR 96-8p, 1996 WL 374184, at *7 (1996).

If Plaintiff is arguing the magistrate judge should have considered recent deterioration in his impairments as affecting his RFC, the court rejects that argument for the same reasons it rejects his arguments that new medical records should be considered. Any recent deterioration in Plaintiff's impairment severity and daily activities that affect his current RFC are not material to the ALJ's assessment of his RFC for the period before the ALJ's decision and would need to be considered pursuant to a new application for disability benefits.

In his objections, Plaintiff alleges that his restrictions are greater than those reflected in the ALJ's RFC assessment. He challenges the ALJ's findings about his ability to perform frequent lifting, sit "for six hours with only a five-minute break," balance, crawl, stoop, use foot controls, kneel, and crouch. [ECF No. 29 at 1–2.] He further asserts he must lie down after sitting for one to one-and-a-half hours. *Id.* at 2. Additionally, he complains the ALJ erred in relying on

the "evaluation by a doctor who saw me for only five minutes and conducted minimal tests" rather than giving more weight to his extensive medical history, imaging results, and ongoing specialist care. *Id.*

The court finds no merit in these objections, as the magistrate judge thoroughly considered these arguments and cited specific evidence from the record supporting the ALJ's conclusions.  *See* ECF No. 25 at 7–16. She thoroughly addressed Plaintiff's allegation that the ALJ relied on outdated evidence while ignoring more recent medical findings. *Id.* at 14. The magistrate judge noted that "with the exception of the psychological consultation, the two consultative examinations were during the relevant time period (Dr. McCann in November 2020 and Dr. Oster in December 2021)" and "the ALJ thoroughly discusse[d] the medical evidence from the relevant time period." *Id.*

The magistrate judge found substantial evidence supported  the ALJ's "determination that Plaintiff had the RFC to perform a reduced range of sedentary work…." *Id.* at 7. She concluded "the ALJ properly considered Plaintiff's treatment record as to his severe and non-severe impairments, the findings of the consultative psychiatrist and physicians, the findings of the state agency consultants, and Plaintiff's objective complaints in determining Plaintiff's RFC." *Id.* Thus, the magistrate judge explained the ALJ had relied on all the relevant evidence of record in accordance with 20 C.F.R. § 416.945 and SSR 96-8p.

In the Report, the magistrate judge specifically addressed the ALJ's consideration of Plaintiff's medical history, imaging results, and evaluation and treatment records. [ECF No. 25 at 7–15.] She noted the ALJ had "discussed Plaintiff's history of coronary artery disease with myocardial ischemia and cardiac catheterization with stenting that occurred approximately five years prior to the relevant time period," but noted "the record during the relevant time period . . . did not indicate any exacerbations or ongoing treatment for these impairments other than

Plaintiff being advised to continue his home medications." *Id.* at 7–8. She also noted the ALJ had discussed Plaintiff's "emergency medical treatment for chest pain in March 2021," nuclear stress testing during the visit, subsequent diagnostic nuclear stress testing, chest x-rays, and his June 2021 treatment for acute renal failure, which produced no significant findings. *Id.* at 8. She reasonably concluded substantial evidence supported the ALJ's finding that "Plaintiff's coronary heart disease with stenting, myocardial infarction, and reduce ejection fraction limited Plaintiff to sedentary work with limitations with additional postural and environmental limitations." *Id.*

The magistrate judge also found the ALJ properly considered evidence of Plaintiff's kidney impairment, reviewing specific treatment notes and their implications for Plaintiff's functional limitations. *Id.* at 9–10. The ALJ cited a February 2020 treatment note indicating "near normal kidney function," a "gap in treatment . . . from February 2020 until June 2021, indicating that [Plaintiff's] impairment and its symptoms are less limiting than alleged," emergency treatment related to acute renal failure, dehydration, and urinary tract infection in 2021 with improvement, and a December 2021 consultative exam showing generally normal physical findings. Tr. at 29–30. He wrote "[o]ut of an abundance of caution, and in consideration that the claimant did experience a single instance of generalized weakness that improved, the residual functional capacity limits the claimant to sedentary work with postural and environmental limitations in addition to providing that the clamant requires worksites that have restroom facilities for employee use." Tr. at 30.

A review of the record supports the magistrate judge's finding that the ALJ adequately addressed the relevant evidence and thoroughly explained the restrictions he included in the RFC assessment to address Plaintiff's lumbar DDD and bilateral hip DJD. [ECF No. 25 at 10–13.] The ALJ provided a well-reasoned analysis to support his finding that Plaintiff's allegations were "inconsistent with the evidence of record" and that he had the RFC to perform sedentary work

requiring he lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours with the ability to alternate standing/walking for five minutes after sitting for two hours continuously, stand and/or walk for a total of two hours with the ability to alternate to sitting for five minutes after every 30 minutes of standing or walking continuously, operate foot and hand controls frequently, climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, occasionally work in extreme heat and vibration, never work at unprotected heights, frequently work near moving mechanical parts, and would be limited to worksites that have restroom facilities for employees to use. Tr. at 25, 28. He explained:

> Regarding the claimant's lumbar degenerative disc disease and bilateral hip degenerative joint disease, despite abnormal imaging from prior to the application date, the record does not indicate any ongoing treatment or complaints to a treatment provider regarding these impairments. Nor does the record indicate any emergency room treatment for these impairments. Furthermore, physical examinations of the claimant . . . revealed normal findings including full strength of the upper and lower extremities with the exception of a limited lumbar range of motion and reduced squatting on a single occasion. The claimant was also noted to have a normal gait and did not require the use of an assistive device to ambulate. These findings are inconsistent with the claimant's allegations regarding standing and walking. Also inconsistent with the claimant's allegations is the claimant's ability to engage in exercise on at least one hour per day. While it is certainly commendable that the claimant made the decision to engage in regular exercise for weight loss, and to improve his overall health, his exercise activity does demonstrate his ability to perform greater physical activities than those alleged including his ability to walk. The more recent records do not suggest the dramatic worsening, alleged, and at most supports that the claimant should not be engaged in heavier lifting on a regular and continuous basis. There is some limited support for some of the claimant's allegations, in terms of even isolated episodes of weakness and reduced ejection fraction.

Tr. at 28–29.

The ALJ specifically addressed the 2022 MRI report submitted post-hearing, noting:

> These findings reasonably reduce the claimant's functionality to sedentary. Thus, I have limited the claimant to sedentary work and allowed for alternating between sitting and standing after sitting for 2 hours continuously and standing/walking for 30 minutes continuously. The residual functional capacity also provides for postural limitations in addition to limitations on his ability to operate foot and

> hand controls. Some postural and environmental limitations are appropriate, including as a precaution in the event of a possible episode of fatigue or weakness. The claimant's MRI is certainly disconcerting, and does suggest worsening over the past years. The overall record relevant to the period at issue, however, including an apparent ability to tolerate trans-Atlantic flights and to operate as a storefront sole proprietor for a time, is not sufficient to establish an inability to perform sedentary exertional work for any 12-month continuous period.

Tr. at 29.

Plaintiff's challenge to the ALJ's consideration of his travel to England is unpersuasive. The magistrate judge noted that the ALJ considered Plaintiff's trans-Atlantic flights as one factor among many in assessing his functional limitations. [ECF No. 25 at 15.] The ALJ considered Plaintiff's abilities to tolerate trans-Atlantic flights and operate a storefront as a sole proprietor, in addition to the overall record, in concluding he had not "establish[ed] an inability to perform sedentary work for any 12-month continuous period." Tr. at 29. The magistrate judge also reviewed Plaintiff's hearing testimony, abilities he endorsed in function reports, notes from his medical providers, and his having obtained online personal training and nutrition certificates and a federal firearms license over the relevant period. [ECF No. 25 at 15–16.] An ALJ should consider a claimant's daily activities under SSR 96-8p and may consider any other factors concerning the claimant's functional limitations and restrictions based on pain or other symptoms in accordance with SSR 16-3p. The magistrate judge did not err in finding the ALJ appropriately considered this evidence.

The ALJ's decision presents a clear analysis of Plaintiff's treatment history, medical findings, symptom report, and other relevant evidence. *See* SSR 96-8p. He identified specific inconsistencies between Plaintiff's allegations and the medical record in accordance with 20 C.F.R. § 404.1529(c) and SSR 16-3p, justifying his decision not to fully credit Plaintiff's allegations. The magistrate judge reasonably concluded that substantial evidence supported the ALJ's RFC assessment.

Thus, the court finds the Report correctly found substantial evidence supported the ALJ's conclusion that Plaintiff was not disabled under the Social Security Act. Thus, the court overrules Plaintiff's objections.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record, the court adopts the Report, ECF No. 25, and affirms the Commissioner's decision.

IT IS SO ORDERED.

February 12, 2025  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge